**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GWENDOLYN HINTON, | ) | CASE NO. 5:12 CV 1349 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | |
| | ) | <u>MEMORANDUM OF OPINION</u> |
| JUDGE LINDA TUCCI TEODOSIO, et al., | ) | |
| | ) | |
| Defendants. | ) | |

*Pro se* Plaintiff Gwendolyn Hinton filed this action under 42 U.S.C. § 1983, 42 U.S.C. §2000e, and Ohio Revised Code §§ 2923.31-2923.36 against Summit County Juvenile Court Judge Linda Tucci Teodosio, Summit County Juvenile Court Magistrate James Whited, Attorney Holly Bednarski, Attorney Lynda Harvey Williams and Attorney Bruce M. Cichocki. In the Complaint, Plaintiff alleges primary custody of her child was given to another family member. She seeks monetary damages.

Plaintiff also filed an Application to Proceed *In Forma Pauperis*. That Application is granted.

**I.    Background**

Plaintiff's Complaint is disjointed and despite its length, contains very few factual allegations. She filed a substantially similar action in this Court twelve days before submitting this case in which she supplied the Court with voluminous exhibits. *See Hinton v. Teodosio*, No. 5:12

CV 1267 (N.D. Ohio filed May 18, 2012)(Adams, J.). The Court will consider factual information contained in the documents in that case only to place the allegations in this action into a comprehendible format.

Plaintiff and Gregory Long are the biological parents of O.L., born in 2005. Plaintiff alleges Mr. Long has an extensive criminal record which includes convictions for assault, sexual imposition, and domestic violence. Plaintiff has another son, T.H. who is approximately eleven years older than O.L. and who has a different biological father. He resides in the home with Plaintiff.

Not long after O.L.'s birth, Long filed an action in the Summit County Domestic Relations Court seeking custody or visitation with O.L. Plaintiff was the legal custodian of O.L. and Long had been allocated parenting time with O.L. by court order. Both parties alleged that the other was not complying with the court-ordered visitation. Plaintiff filed police reports claiming Long did not return the child when visitation concluded. Long filed a Motion to Show Cause why Plaintiff should not be held in contempt claiming Plaintiff would not allow the child to attend visitations.

In 2008, during his visitation with O.L., Long took O.L. to the emergency room because O.L. had bruises on his neck and arms. Emergency room physicians concluded that the bruising was likely caused by physical abuse. Long told the physicians that Plaintiff had caused the bruises. Summit County Children Services ("SCCS") was notified and Plaintiff was arrested. Both O.L. and T.H. were removed from Plaintiff's home by SCCS, which initiated an abuse and dependency action for both children in the Summit County Juvenile Court. O.L. was placed in the temporary kinship care of his 87-year-old paternal grandmother, Juanitia Long on the condition that Mr. Long move out of his mother's house. T.H. was placed in foster care. The criminal charges against Plaintiff were dropped by the prosecutor, who noted on the dismissal that he or she suspected that the wrong

-2-

person may have been charged with the crime. The prosecutor did not indicate which other person he or she suspected of perpetrating the abuse.

Although the criminal charges against Plaintiff were dropped, both children remained in the temporary custody of SCCS. Plaintiff was given separate supervised visits with her sons. T.H. was returned to her home in 2008 or 2009. Plaintiff requested reunification with O.L. indicating that SCCS had clearly determined her home to be safe for T.H. Her request, however, was denied. Sometime thereafter, Plaintiff and Mr. Long sought to regain legal custody through the Juvenile Court. Mr. Long was granted permanent legal custody in November 2009. Plaintiff does not indicate what visitation she was granted with O.L.

It appears from the pleading that Plaintiff was represented by Ms. Bednarski, Ms. Harvey Williams, and Mr. Cichocki. Ms. Bednarski may have represented Plaintiff in 2008. Plaintiff was unhappy with this representation. She contends Bednarski did not question the initiation of the action in Domestic Relations Court. Plaintiff claims she did not return telephone calls or file motions that Plaintiff deemed appropriate.

Plaintiff does not provide any indication of the time period in which Ms. Harvey Williams represented her. She claims Harvey Williams did not object to the action being in Domestic Relations Court, and did not call to the court's attention that the child was residing with Mr. Long's sister. She claims the attorney did not ask either the paternal grandmother or her about allegations of sexual abuse.

Plaintiff suggests Mr. Cichocki represented Plaintiff possibly as recently as 2011. She indicates there is a Juvenile Court order limiting her access to the child. She states Mr. Long moved with the child and did not provided an address. She contends Cichocki is not adequately raising the

-3-

issue of interference with custody. She alleges he divulged information about her case. She claims he was supposed to assist her with having the prior custody order reversed. She contends custody should not have been awarded to Mr. Long and she attempted in 2011 to have custody of O.L. returned to her. She states she was never amendable to shared parenting. She alleges she paid large sums on money to these attorneys and still lost her case.

Plaintiff asserts no causes of action in the body of her Complaint. In the case caption, and introduction, she indicates she is bringing claims of discrimination, violation of civil rights through collusion, conspiracy, and fraud under 42 U.S.C. § 1983, discrimination under Title VII, 42 U.S.C. § 2000e and violation of Ohio Revised Code § 2923.31 to § 2923.36. She seeks return of her legal fees.

## II.     Standard of Review

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[1] *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless. *Neitzke*,

---

[1] An *in forma pauperis* claim may be dismissed *sua sponte*, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. *McGore v. Wrigglesworth*, 114 F.3d 601, 608-09 (6th Cir. 1997); *Spruytte v. Walters*, 753 F.2d 498, 500 (6th Cir. 1985), *cert. denied*, 474 U.S. 1054 (1986); *Harris v. Johnson*, 784 F.2d 222, 224 (6th Cir. 1986); *Brooks v. Seiter*, 779 F.2d 1177, 1179 (6th Cir. 1985).

490 U.S. at 327. A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal* , 129 S.Ct. 1937, 1949 (2009). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the Complaint are true. *Bell Atl. Corp.*, 550 U.S. at 555. The Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.* In reviewing a Complaint, the Court must construe the pleading in the light most favorable to the Plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir.1998).

## III.    Analysis

### A.  Judicial Officers

Plaintiff includes claims against Summit County Juvenile Court Judge Linda Tucci Teodosio and Magistrate Judge James Whited in their official capacities. Because the Juvenile Court is an arm of the State of Ohio, a suit against Judge Tucci Teodosio or Magistrate Whited in their official capacities is a suit against the State of Ohio itself. *See Mumford v. Basinski*, 105 F.3d 264, 269 (6th Cir.1997); *see also Will*, 491 U.S. at 71. The Eleventh Amendment is an absolute bar to the imposition of liability upon states or their agencies. *Latham v. Office of Atty. Gen. of State of Ohio*, 395 F.3d 261, 270 (6th Cir. 2005). Plaintiff cannot bring a claim for damages against Judge Tucci Teodosio or Magistrate Whited  in their official capacities.

Moreover, Plaintiff cannot proceed with a claim against Judge Tucci Teodosio or Magistrate Whited in their individual capacities. Judicial officers are absolutely immune from civil suits for money damages. *Mireles v. Waco*, 502 U.S. 9, 9 (1991); *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997). They are accorded this broad protection to ensure that the independent and impartial exercise of their judgment in a case is not impaired by the exposure to damages by dissatisfied litigants. *Barnes*, 105 F.3d at 1115. For this reason, absolute immunity is overcome only in two situations: (1) when the conduct alleged is performed at a time when the defendant is not acting as a judge; or (2) when the conduct alleged, although judicial in nature, is taken in complete absence of all subject matter jurisdiction of the court over which he or she presides. *Mireles*, 502 U.S. at 11-12; *Barnes*, 105 F.3d at 1116. *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978).

Plaintiff cannot overcome the presumption of immunity under the first criteria. The determination of whether an action is performed in the defendant's judicial capacity, depends on the "nature" and "function" of the act, not on the act itself. *Mireles*, 502 U.S. at 13; *Stump* 435 U.S. at 362. Looking first to the "nature" of the act, the Court must determine whether the conduct giving rise to the claim it is a function generally performed by a judge. *Stump*, 435 U.S. at 362. This inquiry does not involve a rigid scrutiny of the particular act in question, but rather requires only an overall examination of the judge's alleged conduct in relation to general functions normally performed by judges. *Mireles*, 502 U.S. at 13. Second, an examination of the "function" of the act alleged requires the Court to assess whether the Plaintiff dealt with the judicial officers in their respective judicial roles.

Upon applying these principles, it is evident on the face of the pleading that the Judge and Magistrate were acting in their judicial capacities at all times that the conduct alleged in Plaintiff's

Complaint occurred. The issuance of judicial orders pertaining to shelter care or kinship care temporary placement, permanent legal custody and visitation, and the determination of credibility of witnesses are all actions normally performed by juvenile court judges and magistrates. Furthermore, Plaintiff interacted with the Judge and Magistrate only when they were performing their duties as judicial officers. Plaintiff cannot overcome the broad application of judicial immunity under this criteria.

Judicial immunity can also be defeated when the conduct alleged, although judicial in nature, is taken in complete absence of <u>all</u> jurisdiction. *Mireles*, 502 U.S. at 11-12; *Barnes*, 105 F.3d at 1116. (emphasis added.) When the immunity of the judge is at issue, the scope of the judge's jurisdiction is to be broadly construed. *Stump*, 435 U.S. at 356-57. A judge will be not deprived of immunity because the action he or she took was performed in error, done maliciously, or was in excess of his or her authority. *Id.* Actions taken in complete absence of all jurisdiction are those acts which are clearly outside of the subject matter jurisdiction of the court over which the judge presides. *King v. Love*, 766 F.2d 962, 965 (6th Cir. 1985); *see Barnes*, 105 F.3d at 1122. Conversely, merely acting in excess of authority does not preclude immunity. *See Sevier v. Turner*, 742 F.2d 262, 271 (6th Cir. 1984).

In the present case, there are no allegations set forth in the Complaint which reasonably suggest that Judge or Magistrate acted outside of the subject matter jurisdiction of the Juvenile Court. The Juvenile Court judges have jurisdiction to hear all matters involving temporary and permanent custody, and the allocation of parenting time and visitation with children adjudged to be abused, neglected or dependent. O.R.C. § 2151.353. Plaintiff contends that the Judge and Magistrate issued orders which Plaintiff believes to be factually mistaken and contrary to Ohio law.

If these allegations are true, Plaintiff's only remedy is an appeal of the order in question. She does not have recourse against the judge or the magistrate for damages in a civil rights action.

### B. Suits against Private Parties under 42 U.S.C. § 1983

Plaintiff also indicates she is asserting claims for violation of her civil rights under 42 U.S.C. § 1983 against Bednarski, Harvey Williams and Cichocki. To establish a prima facie case under 42 U.S.C. § 1983, Plaintiff must assert that a person acting under color of state law deprived her of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). Generally to be considered to have acted "under color of state law," the Defendant must be a state or local government official or employee. Bednarski, Harvey Williams and Cichocki are private attorneys, not government officials.

As private parties, these Defendants will only be subject to suit under § 1983 if their actions constitute "state action" may be "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). The Supreme Court has established four tests for determining whether the challenged conduct may be fairly attributable to the state for purposes of a § 1983 claim. These are: (1) the public function test; (2) the state compulsion test; (3) the symbiotic relationship or nexus test; and (4) the entwinement test. *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir.1992); *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288, 298 (2001). The actions of Bednarski, Harvey Williams and Cichoki do not fit any of these criteria.

The public function test requires that the private party exercise powers that are traditionally exclusively reserved to the state, such as holding elections, *Flagg Bros. v. Brooks*, 436 U.S. 149, 157 (1978), or exercising the power of eminent domain. *See Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 353 (1974). Representing clients in civil or criminal matters are not powers reserved

exclusively to the state. The public function test therefore cannot be the basis for "state action" for a §1983 claim.

The state compulsion test requires that a state exercise such coercive power or provide such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the state. *See Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982). More than mere approval or acquiescence in the initiatives of the private party is necessary to hold the state responsible for those initiatives. *Id*. Again, Plaintiff alleges only that these Defendants played some role in the custody litigation. There is no suggestion that the state exercised such coercive powers that these Defendants' actions cannot be deemed to be their own.

Under the symbiotic relationship or nexus test, the action of a private party constitutes state action when there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself. *See Jackson*, 419 U.S. at 357-58; *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 724-25 (1961). This occurs only when the party "acted together with or ... obtained significant aid from state officials" and did so to such a degree that its actions may properly be characterized as "state action." *Lugar*, 457 U.S. at 937. Privately retained attorneys are not considered state actors under 42 U.S.C. § 1983. *Washington v. Brewer*, No. 91-1935, 1991 WL 243591 (6th Cir. Nov. 21, 1991); *see also, Polk County v. Dodson*, 454 U.S. 312, 321 (1981). There is no indication that these Defendants secured significant assistance from the state in performing their duties.

The entwinement test requires that the private entity be "entwined with governmental policies" or that the government be "entwined in [the private entity's] management or control." *Brentwood*, 531 U.S. at 296. The crucial inquiry under the entwinement test is whether the

"nominally private character" of the private entity "is overborne by the pervasive entwinement of public institutions and public officials in its composition and workings [such that] there is no substantial reason to claim unfairness in applying constitutional standards to it." *Id*. at 298. The fact that a public entity has acted in compliance with a private entity's recommendations does not transform the private entity into a state actor. *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179 (1988). Although these Defendants were performing duties related to the custody litigation there is no suggestion that the government or the court was excessively intertwined with the management and control of their businesses or operations.

Because Bednarski, Harvey Williams and Cichocki do not qualify as state actors under any of the four tests set forth by the Supreme Court, they cannot be held officially or individually liable for constitutional violations under 42 U.S.C. §1983. The constitutional claims against them under §1983 are dismissed.

### C. Title VII, 42 U.S.C. § 2000e

Plaintiff also indicates she is asserting a claim under Title VII for "discrimination, fraud and conversion." (Doc. 1 at 3.) Title VII concerns discrimination in the course of employment. Plaintiff is not claiming she was the victim of workplace discrimination. This statute is not applicable to the facts set forth in the Complaint.

### J. State Law Claims

Finally, Plaintiff asserts a claim under Ohio Revised Code §§ 2923.31-2923.36. for criminal conspiracy. The statute also contains a provision authorizing a civil action:

> Any person who is injured or threatened with injury by a violation of section 2923.32 of the Revised Code may institute a civil proceeding in an appropriate court seeking relief from any person whose conduct violated or allegedly violated section 2923.32 of the Revised Code or

> who conspired or allegedly conspired to violate that section, except that the pattern of corrupt activity alleged by an injured person or person threatened with injury shall include at least one incident other than a violation of division (A)(1) or (2) of section 1707.042 or division (B), (C)(4), (D), (E), or (F) of section 1707.44 of the Revised Code, of 18 U.S.C. 1341, 18 U.S.C. 1343, 18 U.S.C. 2314, or any other offense involving fraud in the sale of securities.

To be guilty of a violation established by Ohio Revised Code § 2923.32, the Defendants must: (1) be employed by, or associated with, any enterprise and conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt; (2) through a pattern of corrupt activity or the collection of an unlawful debt, acquire or maintain, directly or indirectly, any interest in, or control of, any enterprise or real property; (3) knowingly receive any proceeds derived, directly or indirectly, from a pattern of corrupt activity or the collection of any unlawful debt, and use or invest, directly or indirectly, in the acquisition of any title to, or any right, interest, or equity in, real property or in the establishment or operation of any enterprise. O.R.C. § 2923.32(A).

Here, Plaintiff alleges very few facts. There is no suggestion that any of the Defendants engaged in a criminal enterprise, corrupt activity, or collection of an unlawful debt. Plaintiff does not specify the actions each Defendant took which she believes to be in furtherance of a criminal enterprise. Plaintiff simply concludes that this statute has been violated. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Iqbal,* 556 U.S. at 677.

**IV.     Conclusion**

Accordingly, this action is dismissed pursuant to 28 U.S.C. §1915(e). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[2]

       IT IS SO ORDERED.


Date: 10/24/2012                                    /s/John R. Adams
                                                          JOHN R. ADAMS
                                                          UNITED STATES DISTRICT JUDGE

---

[2] 28 U.S.C. § 1915(a)(3) provides:

> An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith.

**IV.     Conclusion**

Accordingly, this action is dismissed pursuant to 28 U.S.C. §1915(e). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[2]

IT IS SO ORDERED.

Date: 10/24/2012                    /s/John R. Adams
                                    JOHN R. ADAMS
                                    UNITED STATES DISTRICT JUDGE

---

[2] 28 U.S.C. § 1915(a)(3) provides:

> An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith.